**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

NICOLE CARSON,

Plaintiff,

v. Case No: 8:25-cv-222-TPB-CPT

ENTERPRISE LEASING
COMPANY OF FLORIDA, LLC,

Defendant.
_______________________________________ /

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on "Defendant's Motion for Summary Judgment and Memorandum of Law," filed on February 26, 2026. (Doc. 39). Plaintiff filed a response in opposition on March 31, 2026. (Doc. 46). Defendant filed a reply on April 13, 2026. (Doc. 47). The Court heard argument on the motion on May 20, 2026. *See* (Doc. 51). Based on the motion, response, reply, argument of counsel, court file, and record, the Court finds as follows:

**Background**

Plaintiff Nicole Carson began working for Defendant Enterprise Leasing Company of Florida LLC on July 30, 2018, as an Assistant Branch Manager. She was promoted to Branch Manager in April 2021. Plaintiff alleges that she began experiencing sexual harassment by her supervisor, Anthony Bellina, beginning in early 2023. Specifically, Plaintiff claims that Bellina, an Area Manager for Defendant, visited the branches she worked at from time to time. When Bellina

visited her branches, he made comments about Plaintiff's hair being in a bun or Plaintiff's wearing pants. Further, Bellina allegedly would greet Plaintiff with a hug or arm caress in large groups of people. At some point in time, Plaintiff told Bellina that his comments and touching her made her uncomfortable. Plaintiff also told another employee, Kelly Spooner, that she was unsure of how to handle the encounters with Bellina. Spooner had been Plaintiff's supervisor in the past, but she was not Plaintiff's supervisor at the time Plaintiff discussed Bellina's conduct with her.

In October 2023, Plaintiff and three others applied for one available promotion to Area Manager. Plaintiff was interviewed by a four-person panel that included Bellina and three others, Andrew Cormier, Mike Stopcyznski, and Rob Wilson. Ultimately, Plaintiff did not receive the promotion, which was given to another Branch Manager, Carly King. Plaintiff alleges that she was not selected for the position because she complained to Bellina and Spooner that Bellina's comments and touching her made her uncomfortable.

In January of 2024, Plaintiff made a formal complaint to Defendant's Human Resources department about her uncomfortable encounters with Bellina. HR opened an investigation into Bellina and later fired him in February of 2024 because "[a] comprehensive investigation uncovered concerns with [Bellina's] management style and the manner in which he made comments about women's attire and appearances which created a hostile work environment." Plaintiff also alleges that Defendant denied her another promotion in 2024, after Defendant had

fired Bellina, in retaliation for her prior complaints. On April 19, 2024, Plaintiff submitted her resignation with two weeks' notice. Defendant accepted her resignation immediately and sent her home.

On January 27, 2025, Plaintiff filed the instant case asserting the following claims for relief: Title VII retaliation – failure to promote (Count I); Title VII retaliation – constructive discharge (Count II); Title VII retaliation – post-charge threat (Count III); Florida Civil Rights Act ("FCRA") retaliation – failure to promote (Count IV); FCRA retaliation – constructive discharge (Count V); and retaliation pursuant to § 448.101(3), *F.S.* (Count VI). The Court dismissed Counts III and VI for failure to allege an adverse employment action on May 23, 2025. *See* (Doc. 22). Counts I, II, IV, and V remain. Defendant moved for summary judgment as to Plaintiff's remaining claims. On July 7, 2026, the Court entered an endorsed order granting Defendant's motion for summary judgment. (Doc. 55). This Order provides further detail and explanation for that ruling.

## **<u>Legal Standard</u>**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

## Analysis

Defendant argues that it is entitled to summary judgment on Plaintiff's retaliation claims under both Title VII and the FCRA for failure to promote and constructive discharge.

***Retaliation – Failure to Promote***

Title VII prohibits retaliation against an employee because the employee has "opposed any practice made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e-3(a). Under the FCRA, "[i]t is an unlawful employment practice for an employer . . . to discriminate against any person because that person has opposed any practice which is an unlawful employment practice[.]" § 760.10(7), *F.S.* Accordingly, the FCRA prohibits retaliatory actions in the same manner as Title VII. *Fuller v. Edwin B. Stimpson Co. Inc.*, 598 F. App'x 652, 653 (11th Cir. 2015) ("The FCRA is modeled after Title VII, and claims brought under it are analyzed

under the same framework, so FCRA claims do not need a separate discussion and their outcome is the same as the federal claims.”).

To establish a *prima facie* case of retaliation under the *McDonnell Douglas* framework, as Plaintiff attempts to do here, she must offer evidence that: (1) she engaged in statutorily protected activity by opposing a prohibited employment practice; (2) she suffered a materially adverse action; and (3) there is a causal relation between the two events. *See Johnson v. Miami-Dade Cty.*, 948 F.3d 1318, 1325 (11th Cir. 2020); *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010) (applying the same framework to analyze FCRA claims as is applied to claims brought under Title VII). If Plaintiff makes out a *prima facie* case, the burden shifts to Defendant to articulate a legitimate, non-retaliatory reason for its actions. *See Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1345 (11th Cir. 2022). If Defendant proffers a non-retaliatory reason, Plaintiff must show the proffered reason was pretextual. *See id.* at 1352.

<u>October 2023 Promotion</u>

As to Plaintiff’s claim based on her failure to receive the October 2023 promotion, Defendant argues that it is entitled to summary judgment because Plaintiff cannot show 1) a protected activity, 2) but-for causation, or 3) pretext.

*Protected Activity*

To constitute protected activity under Title VII, an employee’s internal complaint must explicitly or implicitly communicate the employee’s belief that the conduct reported constitutes unlawful employment discrimination. *Murphy v. City*

*of Aventura*, 383 F. App'x 915, 918 (11th Cir. 2010)); *Devito v. W. Pub. Corp.*, No. 8:19-cv-2764-SPF, 2021 WL 5826120, at *5 (M.D. Fla. Dec. 8, 2021) (holding that, to constitute protected activity, an employee's internal complaint "must put the employer on notice that the plaintiff is opposing a practice made unlawful by Title VII[.]"). In addition, the employee's belief that the conduct constitutes unlawful employment discrimination must not only be held by the employee in good faith but must also be objectively reasonable as measured against existing substantive law. *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999); *Murphy,* 383 F. App'x at 918; *Devito*, 2021 WL 5826120, at *5; *see also Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997) ("It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.").

On the record in this case, Plaintiff could not have reasonably believed that her complaints about Bellina reported conduct that rose to the level of unlawful employment discrimination under Title VII (or the FCRA). Title VII prohibits discrimination in various forms. One form is discriminatory tangible employment actions – such as decisions about an employee's pay, promotion, position or job duties. *See, e.g., Nurse "BE" v. Columbia Palms W. Hosp. Ltd. P'ship*, 490 F.3d 1302, 1308 (11th Cir. 2007). Plaintiff does not argue that her complaints about Bellina involved complaints about tangible employment actions.

Another form of discrimination prohibited by Title VII is sexual harassment that creates a "hostile work environment." *Id.* This prohibition, however, does not create a "general civility code" or protect employees from the "ordinary tribulations of the workplace." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). A prohibited hostile work environment does not occur where an employee experiences only mild or isolated instances of inappropriate or harassing conduct. *E.g.*, *Faragher*, 524 U.S. at 788 ("[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"); *Edgerton v. City of Plantation*, 682 F. App'x 748, 750 (11th Cir. 2017) (affirming summary judgment on hostile work environment claim where "[a]ny offensive conduct was isolated and appears to have occurred during a relatively small part of [the plaintiff's] workday"). Conduct creating a hostile work environment must be "extreme." *Faragher*, 524 U.S. at 788. To be actionable, harassing conduct based on the employee's protected characteristic (here, sex) must create a workplace "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 836-37 (11th Cir. 2021) (internal quotations omitted).

Plaintiff could not reasonably have believed Bellina's occasional conduct that she says made her uncomfortable was sufficiently severe or pervasive as to create a hostile work environment under the substantive standards set forth above. Accordingly, assuming that Plaintiff subjectively believed she was reporting conduct

that constituted unlawful employment discrimination, that belief, as a matter of law, was not objectively reasonable, and therefore she has failed to point to evidence she engaged in protected activity. *See, e.g., Clover*, 176 F.3d at 1351-52 (holding that the plaintiff's belief that the conduct she reported constituted the creation of a hostile work environment was objectively unreasonable and the plaintiff therefore failed to show protected activity for purposes of her retaliation claim); *Van Portfliet v. H&R Block Mortg. Corp.*, 290 F. App'x 301, 304 (11th Cir. 2008) (affirming directed verdict for defendant employer on retaliation claim where instances of allegedly harassing conduct plaintiff complained of were isolated and not particularly serious).[1]

Because Plaintiff cannot establish that she engaged in a protected activity, Defendant is entitled to summary judgment on her retaliation claims for failure to promote her in October 2023 under both the FCRA and Title VII.

*Causation*

Even if Plaintiff could establish that she engaged in protected activity, her retaliation claims for failure to promote her in 2023 would still fail under both Title VII and the FCRA because Plaintiff is unable to establish causation. In a Title VII retaliation case, evidence of causation must meet the "but for" standard, which

---

[1] Defendant fired Bellina in 2024 on grounds that included conduct by Bellina that Defendant stated created a hostile work environment. Defendant's action, however, occurred in 2024, long after Defendant's failure to promote Plaintiff in October 2023, and followed Defendant's investigation into formal internal complaints about Bellina not only by Plaintiff but by others. Defendant's later action is not probative on the issue of whether Plaintiff's informal objections prior to October 2023 could reasonably be believed to describe conduct creating a hostile work environment under the standards set forth above.

"asks whether 'a particular outcome would not have happened but for the purported cause.'" *See Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1338 (11th Cir. 2023) (quoting *Bostock v. Clayton Cty. Ga.*, 590 U.S. 644, 656 (2020)). Essentially, Plaintiff must show that had she not complained, she would have been promoted. *See Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018).

The record here simply does not support a finding that, had Plaintiff not complained, she would have been promoted in October of 2023. First, a plaintiff cannot establish causation when "the decision maker did not have knowledge that the employee [had engaged, or was attempting to engage,] in protected conduct." *See Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001) (citing *Brungart v. BellSouth Telecomm. Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)). As Plaintiff concedes, the decision to promote King rather than Plaintiff was made unanimously by a panel of four decision makers. Bellina was only one of the four, and there is no evidence the other three members were aware that Plaintiff complained to Bellina or Spooner that Bellina made her "uncomfortable." Nor is there evidence that Bellina in any way influenced or persuaded the other interviewers against hiring Plaintiff for the Area Manager position.[2] Accordingly, Plaintiff cannot show that her complaint about Bellina played any part in the decision not to promote her and Plaintiff cannot establish causation. *See Rodriguez v. Sec'y, U.S. Dep't of Homeland Sec.*, 608 F. App'x 717,

[2] Plaintiff suggests some special role for Bellina in the promotion decision, stating that he was "designated as the hiring manager and interviewer for the Area Manager position." Plaintiff, however, points to no record evidence supporting this suggestion.

721 (11th Cir. 2015) (holding that the plaintiff's retaliation claim failed where three of the four supervisors who evaluated the plaintiff were unaware of his prior discrimination complaint).

Second, Plaintiff cannot establish causation based on a close temporal proximity between her complaints about Bellina and Defendant's failure to promote her. *See Joyner v. City of Atlanta*, 170 F.4th 1320, 1335 (11th Cir. 2026). The record contains no evidence of *when* exactly Plaintiff complained to Bellina or Spooner about Bellina's touching or comments. When confronted with this question at the hearing, Plaintiff speculated that her complaints *may* have occurred sometime before May of 2023. Without evidence as to when she complained about Bellina, Plaintiff cannot establish a close temporal connection between any complaint and her failure to receive the promotion in October 2023. Assuming she complained around May 2023, a temporal gap of five or six months between the complaints and the adverse employment action in October of 2023 is not close enough in time to establish causation. *See Anderson v. Embarq/Sprint*, 379 F. App'x 924, 930 (11th Cir. 2010) (finding no temporal proximity to support causation where the adverse employment action was made "some four and eight months after" the protected activity occurred); *see also Hicks v. Bd. of Cty. Comm'rs*, No. 8:21-cv-1505-TGW, 2023 WL 12167890, at *8 (M.D. Fla. Dec. 4, 2023) (finding no temporal proximity to support causation where "there [was] almost three months between the protected activity and the adverse action").

*Pretext*

Even if Plaintiff had established a *prima facie* case of retaliation for Defendant's failure to promote her in October of 2023, Defendant has proffered a legitimate, non-retaliatory reason for not promoting Plaintiff – that Defendant believed that Carly King was a better, more qualified candidate selected unanimously by the panel of four interviewers for the Area Manager position, who concluded that King "had the highest level of experience, competencies, and communicative plans, and was the best at the interview." Accordingly, to avoid summary judgment, Plaintiff must point to evidence that the proffered reason was pretextual. *See Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1205-06 (11th Cir. 2013) (explaining that an employer satisfies its burden of production by proffering a legitimate, nondiscriminatory reason for failure to promote in a manner specific enough to afford the plaintiff an opportunity to demonstrate pretext).

To meet the burden of showing pretext, it is insufficient for Plaintiff to point to evidence that she was, in fact, the better candidate. *See id.* at 1206. She must point to evidence that the disparities between her qualifications and the qualifications of the person who received the position were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate over" her. *See id.* (quoting *Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007)).

Plaintiff fails to meet this burden. The only evidence Plaintiff proffers is her own opinion and the opinion of two other Branch Managers that Plaintiff was the

better candidate. These managers testified that King's performance as Area Manager after the promotion was not effective and they were unsure why she received the promotion. But their testimony would not support a finding that no reasonable and impartial person could have chosen King over Plaintiff for the position. Plaintiff is therefore unable to show pretext. Accordingly, Plaintiff's retaliation claims for Defendant's failure to promote her in October of 2023 fail for this reason as well.

2024 Promotion

Plaintiff also asserts retaliation claims under Title VII and the FCRA for Defendant's failure to promote her in 2024. The record evidence shows that Plaintiff was not qualified under Defendant's internal qualification system – the "matrix" as the parties refer to it – to apply for the 2024 promotion. In addition, she did not apply for the position, which is also fatal to her claim. Accordingly, her claim based on the 2024 promotion fails as a matter of law. *See Kent v. Garden City, Ga.*, No. 4:23-cv-307, 2025 WL 588999, at *15 (S.D. Ga. Feb. 24, 2025) (explaining that a plaintiff must show that she was "qualified for a promotion, applied for it, and [was] rejected by [her] employer"); *see also Vessels v. Atalanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2008) (same).

An exception to the general rule requiring Plaintiff to apply for the promotion exists where Plaintiff had a "a justifiable belief that the employer's [retaliatory] practices made application a futile gesture." *See Williams v. VWR Int'l, LLC*, 685 F. App'x 885, 887-88 (11th Cir. 2017). To have a "justifiable belief" for purposes of the

"futile gesture" exception, Plaintiff must demonstrate: "(1) that she had a real and present interest in the job for which the employer was seeking applications; and (2) that she would have applied for the job but effectively was deterred from doing so by the employer's [retaliatory] practices." *See id.*

Plaintiff does not invoke this exception or otherwise respond to Defendant's arguments with respect to the 2024 promotion. She briefly refers to another employee who was promoted without meeting Defendant's "matrix" requirements. But this does not suggest that Plaintiff's applying for the 2024 promotion would have been a futile gesture. In fact, if anything, it suggests the opposite – it suggests that, similar to the other employee who was promoted notwithstanding his failure to qualify under the "matrix" system, Plaintiff *could* have applied for and received the 2024 promotion.

Accordingly, for the reasons discussed above, Plaintiff is unable to establish that Defendant retaliated against her by failing to promote her in either October of 2023 or 2024. Accordingly, Defendant is entitled to judgment as a matter of law on the failure to promote claims.[3]

[3] A Title VII plaintiff may also avoid summary judgment by pointing to a "convincing mosaic" of circumstantial evidence pointing to unlawful employment practices prohibited by Title VII. But here, Plaintiff has failed to prove her retaliation claims by pointing to a convincing mosaic because she has not pointed to any circumstantial evidence that would raise a reasonable inference of retaliatory intent. *See Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1311 (11th Cir. 2023) (citing *Yelling*, 82 F.4th at 1342)).

***Retaliation – Constructive Discharge***

Next, Defendant argues that it is entitled to summary judgment on Plaintiff's constructive discharge claims because Plaintiff voluntarily resigned and offered to work out her two weeks.'

"An employee is constructively discharged when [her] employer, rather than discharging [her] directly, intentionally creates a work atmosphere so intolerable that [she] is forced to quit involuntarily." *Gingold v. Bon Secours Charity Health Sys.*, 768 F. Supp. 2d 537, 545 (S.D. N.Y. 2011). This threshold "is quite high." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001); *see also Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009) ("Establishing a constructive discharge claim is a more onerous task than establishing a hostile work environment claim."). Whether Plaintiff resigned voluntarily or was constructively discharged turns on whether she was given an alternative – "the mere fact that the choice is between comparably unpleasant alternatives . . . does not of itself establish that a resignation was induced by duress or coercion, hence was involuntary . . . ." *See Hargray v. City of Hallandale*, 57 F. 3d 1560, 1568 (11th Cir. 1995).

Plaintiff appears to argue that Defendant coerced her into resignation when it could have waived promotion requirements to allow her to qualify for the promotion she was unqualified to receive. She argues that she was "trapped" and that she "had no alternative but to resign." Plaintiff also points to Defendant increasing her work hours to eleven-hour days, six days per week, and choosing to understaff the branch where she worked. However, record evidence shows that

other employees – not just Plaintiff – were required to work long hours and perform tasks such as detailing cars due to understaffing issues. These facts do not support the conclusion that Plaintiff's work environment was intolerable or that she was forced to resign.

In addition, courts have held where, as here, a plaintiff gives two weeks' notice prior to resignation, that establishes that the conditions were not intolerable as a matter of law. *See Gary v. Ga. Dep't of Def.*, No. 1:23-cv-3008-MHC-JEM, 2025 WL 2023012, at *8 (N.D. Ga. June 4, 2025) ("[W]hen Plaintiff resigned, he gave two-weeks' notice, which is inconsistent with someone who felt like he had no choice but to quit."); *Johnson v. Wal-Mart Stores, Inc.*, 987 F. Supp. 1376, 1394 (M.D. Ala. 1997) (explaining that waiting to resign and giving three weeks' notice "strongly suggests that the conditions to which [plaintiff] allegedly [was] subjected were not intolerable"); *Harper v. ULTA Salon Cosmetics & Fragrance, Inc.*, No. 1:05-CV-1285-TWT, 2007 WL 528088, at *34 (N.D. Ga. Feb. 13, 2007) ("[E]vidence shows that [plaintiff] gave eight days notice before she resigned, indicating that her work environment was not intolerable."). Plaintiff has not proffered evidence to establish her constructive discharge claims, and Defendant is entitled to judgment as a matter of law.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) "Defendant's Motion for Summary Judgment and Memorandum of Law" (Doc. 39) is **GRANTED**.

(2) The Clerk is directed to enter judgment in favor of Defendant Enterprise Leasing Company of Florida, LLC and against Plaintiff Nicole Carson.

(3) Following the entry of judgment, the Clerk is directed to terminate any pending motions and deadlines and thereafter close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 27th day of July, 2026.

TOM BARBER
UNITED STATES DISTRICT JUDGE